IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-00087-FL

| | |
|---|---|
| GLENWOOD EARL REVIS, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-19, -20] pursuant to Fed. R. Civ. P. 12(c). Claimant Glenwood Earl Revis ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

**I. STATEMENT OF THE CASE**

Claimant protectively filed applications for benefits on May 4, 2011, alleging disability beginning May 1, 2011. (R. 56, 211-26, 242-43). His claim was denied initially and upon reconsideration. (R. 56, 96-133). A hearing before an Administrative Law Judge ("ALJ") was held on May 6, 2013, at which Claimant, who was represented by counsel, Claimant's brother, and a

vocational expert ("VE") appeared and testified. (R. 56, 67-95). On June 25, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 53-64). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 52), and submitted additional evidence as part of his request (R. 7-50). After reviewing the additional evidence and incorporating some of that evidence into the record, the Appeals Council denied Claimant's request for review on January 29, 2014. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial

2

Case 5:14-cv-00087-FL   Document 23   Filed 02/09/15   Page 2 of 13

evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id*. At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. §§ 404.1520a(e)(3), 416.920a(e)(3).

3

In this case, Claimant contends the ALJ erred in finding Claimant had the Residual Functional Capacity ("RFC") to perform medium work. Pl.'s Mem. [DE-19-1] at 6-7.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant has not engaged in substantial gainful employment since the alleged onset date. (R. 58). Next, the ALJ determined Claimant has the severe impairment of essential hypertension and the non-severe impairment of inguinal hernia. (R. 59). The ALJ found that Claimant's alleged shortness of breath, hay fever/allergies, and numbness from left knee to foot are not medically determinable impairments. *Id.* At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the following limitations: avoid working around concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation. (R. 60). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 60-61). At step four, the ALJ concluded Claimant is unable to perform his past relevant work. (R. 62). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

economy. (R. 62-63).

**B.     Claimant's Testimony at the Administrative Hearing**

At the time of Claimant's May 6, 2013 administrative hearing he was 62 years old and living alone. (R. 71, 81). He receives a small amount of food stamp assistance and early retirement income of $668.00 monthly from Social Security. (R. 71, 80). Claimant completed eighth grade then quit school because he could not keep up, and he went to work on the farm with his father. *Id.* Claimant began working at McDonald's in 1995 as a dishwasher. (R. 72). After 30 days he was moved to kitchen cleaner and then to janitorial work, which he did until May of 2011. *Id.* As a janitor his duties included cleaning the yard, emptying the outside garbage cans, cleaning the bathrooms, cleaning the filters in the air conditioning units on top of the building, changing the grease, and straightening the freezer. (R. 74). Claimant's job involved some lifting, up to approximately 45–50 pounds, a substantial amount of standing and walking, and some climbing, bending, stooping, and reaching. (R. 74-75).

Claimant described a variety of medical conditions impairing his ability to work. In 1995 while Claimant was working in the freezer at McDonald's he experienced shortness of breath and his lung collapsed, which required surgery. (R. 73). Claimant's condition became worse over time as he continued working in the freezer. (R. 73-74). In May of 2011, Claimant began working part-time because his "hip broke down" and he experienced pain, wheezing, and shortness of breath, which made it difficult for him to function. (R. 76-77). Claimant's hours were gradually cut until he was only working three hours a week because he could not do his job properly due to his hip problem and pain in his side. (R. 77). Also in May of 2011, Claimant lost his insurance and began experiencing anxiety and depression due to financial pressure from his medical bills. (R. 78).

5

Claimant underwent hernia surgery in May of 2012 and afterwards began experiencing numbness in his left thigh, which also bothers his left knee. (R. 77). He also experiences constant pain in his side from the surgery and takes 500 milligrams of pain medication daily as needed. (R. 79, 83). The pain medication lasts for six to seven hours before it wears off and he feels pain again. (R. 83). Claimant has high blood pressure for which he takes medication, but it causes dizziness and drowsiness and he has to lie down for two hours after taking the medication. *Id.*

Claimant has difficulty standing, walking, and sometimes sitting. (R. 80). He can stand for approximately ten minutes at a time, sit for only a few minutes comfortably before experiencing numbness in his leg, and has difficulty bending, stooping, or reaching. (R 80-81). He cannot walk far before experiencing shortness of breath and can lift no more than ten pounds. *Id.* Claimant can dress himself but takes his time due to his leg problems, and he asks his brother if he needs help with grocery shopping. (R. 82). Claimant can read and write a little but not well enough to read a newspaper, and his brother helps him with reading and understanding his mail. (R. 78-79). He does not socialize much and sometimes goes to church for prayer or food assistance. (R. 84-85). Claimant does not believe he can work more than 20 hours a week due to his pain. (R. 83).

C.    **Claimant's Brother's Testimony at the Administrative Hearing**

Claimant's brother, George Revis ("Mr. Revis"), testified at the administrative hearing. (R. 86-91). Mr. Revis is retired and disabled. (R. 86). In December of 2012, he noticed Claimant was having difficulty paying his bills. *Id.* Claimant complained to Mr. Revis of pain in his side and pain and numbness in his toes, and Mr. Revis helped Claimant with paying bills and getting groceries when Claimant had to have a hernia operation. (R. 86-87, 89). Mr. Revis did not assist Claimant with his affairs prior to May of 2011, but now sees him at least twice a week. (R. 87, 89-90). He

6

reads and reviews Claimant's mail with him and sometimes takes him places. *Id.* Mr. Revis recalled Claimant had difficulty in school with simple reading, writing, and arithmetic, and also had behavior problems. (R. 88). Claimant has difficulty coping with simple things and cannot care for his minor son, who was in foster care until Mr. Revis took him in. (R. 90).

**D.     Vocational Expert's Testimony at the Administrative Hearing**

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 91-95). After the VE classified Claimant's past work as a commercial cleaner, the ALJ asked the VE whether Claimant could do his past work, as performed, if he were limited to work at the medium exertional level, defined as lifting or carrying 50 pounds occasionally and 25 pounds frequently, standing, walking six hours in an eight-hour workday, sitting for six hours in an eight-hour workday, unlimited push/pull, and avoiding concentrated exposure to fumes, odors, dust, gases, and poor ventilation. (R. 93). The VE opined Claimant's past work would be precluded because of exposure to cleaning agents, being outside, and going in and out of the freezer. (R. 93-94). The ALJ then asked the VE whether there were other jobs available for a hypothetical individual of Claimant's age, education level, and work experience with the same limitations previously listed. (R. 94). The VE listed the jobs of food service worker, DOT # 319.677-014, medium exertion, and SVP of 2; store laborer, DOT # 922.687-058, medium exertion, and SVP of 2; and dining room attendant, DOT # 311.677-018, medium exertion, and SVP of 2. *Id.* The VE indicated her testimony was consistent with the Dictionary of Occupational Titles. *Id.* Claimant's attorney asked if Claimant had to miss two to three days of work a month due to his health problems whether he would be able to perform any of the listed jobs, and the VE replied in the negative. (R. 95).

7

## V. DISCUSSION

### A. The ALJ's RFC Determination

Claimant contends the ALJ erred in finding Claimant had the RFC to perform medium work. Pl.'s Mem. at 6-7. Specifically, Claimant argues that he has had multiple hernia surgeries but still suffers from lower abdominal and groin pain and left-sided hip pain and numbness radiating to his toes, which would preclude the lifting, walking, and standing required for medium work. *Id.* The Commissioner contends that substantial evidence supports the RFC determination. Def.'s Mem. [DE-21] at 12-17.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses Claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions

8

can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

Furthermore, when assessing a claimant's RFC it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *See Craig*, 76 F.3d at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms, and functional restrictions. *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the

9

claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *3.

Here, the ALJ determined Claimant could perform medium exertion work with environmental limitations. (R. 59-60). While Claimant contends he cannot perform medium work due to post-hernia surgery lower abdominal and groin pain and left-sided hip pain and numbness radiating to his toes, the ALJ found that Claimant's hernia was a non-severe impairment, citing medical evidence that Claimant's hernia was repaired without complication on May 15, 2012 and March 18, 2013. (R. 59, 317-29, 332-36, 350-57). The ALJ also determined that Claimant's numbness from his left knee to foot was not a medically determinable impairment because the medical evidence does not document any musculoskeletal or neurological condition related to Claimant's lower left extremity. (R. 59, 337-38). Claimant does not take issue with the evidence cited by the ALJ, but relies on his own testimony regarding his limitations due to pain. Pl.'s Mem. at 6-7. However, after considering the testimony of Claimant and his brother, the ALJ determined Claimant's statements regarding the limiting effects of his symptoms were not entirely credible. (R. 60-61).

The ALJ acknowledged Claimant's testimony that he is unable to work due to pain, that his side hurts constantly, that he feels stiff when standing or sitting, and that he can stand for ten minutes, only walk short distances, and lift no more than ten pounds. (R. 60). However, in discounting Claimant's testimony regarding the extent of his limitations, the ALJ cited an October 10, 2011 consultative examination showing Claimant had an overall normal physical examination, during which Claimant stated he could walk and/or stand for four or five hours. (R. 61, 311-14).

10

Claimant's chief complaints at that time were nasal allergies, hypertension, and shortness of breath and pain in the right side of his chest, and he reported being able to cook, clean, and do household chores by himself. (R. 311-12). Dr. Kumar noted Claimant stood on his toes and bent down to touch his feet with no problem and there was no need for a range of motion chart. (R. 314). Claimant had full strength in his extremities and no loss of sensation. *Id.* Dr. Kumar concluded by stating Claimant's prognosis was good, he was working part time at McDonalds's, and he came to the examination on a moped. (R. 315). The ALJ also noted that despite Claimant's complaints of ongoing pain, he was only prescribed pain medication in conjunction with the recovery phase of his hernia surgeries and that Claimant's pain was relieved by medication for six to seven hours. (R. 61, 83). While Claimant testified his blood pressure medication made him drowsy, on April 10, 2013, he reported to Dr. Jere the he previously felt sleepy with medication but "feels fine now." (R. 83, 361). Further, Dr. Jere's examination findings indicated full range of motion in Claimant's left hip (R. 362) and an x-ray of Claimant's hip revealed "[n]o acute left hip bone abnormality or definite evidence for avascular necrosis" (R. 364). *See Credle v. Colvin*, No. 4:12-CV-264-FL, 2013 WL 6284987, at *5 (E.D.N.C. Dec. 4, 2013) (unpublished) (adopting memorandum and recommendation finding no merit in plaintiff's assertion that he could not perform medium work where restrictions imposed by doctor had expired, an x-ray showed no acute abnormalities, and plaintiff had full muscle strength, normal gait, and full range of motion in his extremities).

The ALJ also discussed the opinion evidence of record. (R. 61-62). The ALJ cited the May 31, 2012 treatment note of Claimant's treating physician Dr. Vire, who examined Claimant following his first hernia surgery and released him to return to work the following day with no restrictions. (R. 61, 332-33). Dr. Vire instructed Claimant to continue Percocet as needed for pain.

11

(R. 333). The ALJ also noted that Dr. Vire examined Claimant on April 2, 2013, after his second hernia surgery and released Claimant to return to work without restrictions on April 15, 2013. (R. 61, 354-55). The ALJ finally cited the March 7, 2012 opinion of the state agency consultant Dr. Jessup, affirmed by Dr. Gawo, that Claimant could perform a full range of medium work but should avoid concentrated exposure to pulmonary irritants. (R. 61, 120-22, 337-38). Claimant has cited no contradictory medical opinion suggesting he is more restricted than the state agency consultants and the ALJ determined. Where the opinions of the state agency medical consultants are consistent with the other evidence of record, as is the case here, the ALJ is entitled to rely upon those opinions in determining the Claimant's RFC. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ considered the testimonial and medical evidence in the record and thoroughly explained her decision. Claimant is essentially asking the court to reconsider the evidence and give controlling weight to Claimant's testimony regarding the extent of his limitations. It is not within the province of the court to reweigh the evidence, even if the court might reach a different result, where the ALJ has considered and analyzed all the relevant evidence and the decision is supported by substantial evidence, as is the case here. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). Accordingly, the ALJ did not err in evaluating Claimant's RFC.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-19] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-20] be ALLOWED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file

timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 9 day of February 2015.

Robert B. Jones, Jr.
United States Magistrate Judge

13